UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

OCTAVIO GOENAGA,                          :
                                          :CIVIL ACTION NO. 3:14-CV-2496
          Plaintiff,                      :
                                          :(JUDGE CONABOY)
          v.                              :(Magistrate Judge Mehalchick)
                                          :
C.O. STEVE MACDONALD, et al.,  :
                                          :
          Defendants.                     :
                                          :

_____

#### MEMORANDUM

Here the Court considers Magistrate Judge Karoline
Mehalchick's Report and Recommendation (Doc. 58) concerning
Defendant Correctional Officer ("C/O") Clark's Motion to Dismiss
(Doc. 48).  Magistrate Judge Mehalchick concludes that Plaintiff,
who was an inmate at the Dauphin County Prison during the relevant
time period and is now incarcerated at FCI-Beckley in West
Virginia, has adequately pled Eighth Amendment claims against
Defendant Lexlucski for excessive force and Defendants MacDonald
and Clark for failure to intervene but has failed to state a claim
on other matters alleged.  (Doc. 58 at 18.)  Therefore, she
recommends that the motion be granted in part and denied part.
(*Id.*)

Defendant Clark objects to the Report and Recommendation on
the basis that Plaintiff cannot seek damages on his excessive force
claim because he has not pled more-than-de-minimis physical injury.
(Docs. 59, 60.)  Plaintiff did not respond to Defendant's objection

and the time for doing so has passed.  Therefore, this matter is
ripe for disposition.

## I. Background

Because Defendant does not object to the background
information contained in the Report and Recommendation, the Court
adopts the facts as set out by Magistrate Judge Mehalchick.

> The facts as alleged by Goenaga are as
> follows: Around 2:45 a.m. on September 12,
> 2014, Lt. Lexlucski was summoned in response
> to an incident in Goenaga's cell.  (Doc. 39,
> at 2).  Lt. Lexlucski called Sgt. Parson to
> take Goenaga to medical, whose knee had
> "popped out of place."  (Doc. 39, at 3).
> Following treatment, which did not include
> pain medication, Goenaga was sent back to his
> cell.  (Doc. 39, at 3).  Goenaga returned to
> medical around 3:40 a.m. for regular insulin,
> after which he was handcuffed for
> transportation to the Special Housing Unit.
> (Doc. 39, at 3).
>
> Due to Goenaga's injured knee, Sgt.
> Parson told C/O's MacDonald and Clark to use
> a wheelchair for transportation.  (Doc. 39,
> at 3).  They refused, due to frustrations
> with the timing and forced Goenaga to walk on
> his injured knee.  (Doc. 39, at 3).  When
> Goenaga could not keep up, he was dragged.
> (Doc. 39, at 4).  Upon the command of Lt.
> Lexlucski, C/O's dropped Goenaga to the
> ground, placed their knees in his back, and
> sprayed mace in Goenaga's face.  (Doc. 39, at
> 4-5).  Goenaga also states the officers
> slapped him in the back of the head.  (Doc.
> 39, at 5).  Goenaga remained in Special
> Housing for 15 days prior to his return to
> general population (Doc. 39, at 6).

(Doc. 58 at 1-2.)  Plaintiff's Amended Complaint clarifies that it
was Defendant Lexlucski who maced him twice while Defendants

2

MacDonald and Clark held him down and failed to intervene.  (Doc.
39 at 4-5.)  Plaintiff also states that he was making no attempts
to resist commands and being maced prevented him from breathing.
(*Id.*)  He says that he was maced the second time after he "began to
beg the lieutenant to please stop hurting him because he wasn't
resisting and asked the lieutenant why he was macing him with
pepper spray."  (*Id.* at 5.)  Plaintiff adds that Defendant Clark
was then "told to get the black chair.  When he got back with the
black chair plaintiff was strapped into the chair for no reason and
removed from population."  (*Id.*)  When he was in the elevator
strapped into the chair, Plaintiff states that "he was slapped
several times in the head for waking them up from their rest time."
(*Id.*)

    The Report and Recommendation sets out the following
procedural background:

> Goenaga filed suit again C/O's MacDonald
> and Clark, as well as Lt. Lexlucski and
> Dauphin County Prison Warden Dominic DeRose.
> (Doc. 1).  Over two years later, only
> Defendants DeRose and Clark have been served.
> Defendant DeRose filed a motion to dismiss on
> April 7, 2015.  (Doc. 18; Doc. 22).  The
> Court granted in part and denied in part
> DeRose's motion.  (Doc. 26, at 20).  The
> Court found Goenaga adequately pled [] Eighth
> Amendment excessive force claims against
> Defendant Lexlucski and Eighth Amendment
> failure-to-intervene claims against Defendant
> MacDonald.  (Doc. 26, at 20).  The Court
> recommended dismissal of: Defendant DeRose
> for lack of personal involvement (Doc. 26, at
> 9); claims of deliberate indifference related
> to allegedly inadequate dietary provisions

3

(Doc. 26, at 11); and claims grounded in Goenaga's placement in the Special Housing Unit (Doc. 26, at 13).  The Court declined dismissal on the grounds that Goenaga failed to exhaust and that the Defendants were entitled to qualified immunity as they did not violate any constitutional rights.  (Doc. 26, at 8; 17).  Following issuance of the Order accompanying these holdings, Goenaga filed an amended complaint.  (Doc. 39).

Defendant Clark returned waiver of service on August 4, 2016, filing the instant motion to dismiss on August 26, 2016.  (Doc. 46; Doc. 48).  Defendant Clark asserts Goenaga's complaint:  (1) does not meet the pleading standards of Rule 8; (2) alleged only de minimis physical injuries; (3) does not allege personal involvement to all Defendants; (4) does not allege deliberate indifference; (5) does not establish any Constitutional violation by Goenaga's placement in prison; (6) does not establish supervisory liability; (7) does not show the Defendants violated Goenaga's rights; (8) fails for Goenaga's admitted failure to exhaust; and (9) that exhaustion is not excused by any imminent danger.  (Doc. 51).

Defendant Clark filed his brief in support on September 16, 2016.  (Doc. 51). Having received no brief in opposition, the Court entered an Order extending the deadline for Goenaga's opposition to November 8, 2016. (Doc. 52).  On November 10, 2016, Goenaga moved for another extension and to obtain copies of the Defendant's motion.  (Doc. 53). The Court granted Goenaga's motion, extending the deadline for a brief in opposition to December 2, 2016.  (Doc. 54).  On December 6, 2016, Goenaga informed the Court that he had not received copies of the motion.  (Doc. 55).  In response, the Court extended the deadline again to January 31, 2017.  (Doc. 56).  This deadline passed without communication from Goenaga.  Accordingly, per the terms of the Order, the Court considers the motion to dismiss unopposed and therefor

4

ripe for review.

(Doc. 58 at 2-3.)

## II. Standard of Review

### A.    *Report and Recommendation*

When a magistrate judge makes a finding or ruling on a motion or issue, his determination should become that of the court unless objections are filed.  *See Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).  When objections are filed to a magistrate judge's Report and Recommendation, the district judge makes a *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made.  28 U.S.C. § 636(b)(1)*; Cippolone v. Liggett Group, Inc.*, 822 F.2d 335, 340 (3d Cir. 1987), *cert. denied*, 484 U.S. 976 (1987).  To warrant *de novo* review, the objections must be both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  The court may accept, reject or modify, in whole or in part, the findings made by the magistrate judge.  28 U.S.C. § 636(b)(1).  Uncontested portions of the report are reviewed for clear error.  *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

### B.    *Motion to Dismiss*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting and citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

556 (2007)).

Pursuant to *Twombly* and *Iqbal*, the Court of Appeals for the

Third Circuit set out three steps required of a court reviewing the

sufficiency of a claim in *Connelly v. Lane Constr. Corp.*, 809 F.3d

780, 787 (3d Cir. 2016).

> First, it must "tak[e] note of the elements
> [the] plaintiff must plead to state a claim."
> *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937.
> Second, it should identify allegations that,
> "because they are no more than conclusions,
> are not entitled to the assumptions of
> truth." *Id.* at 679, 129 S.Ct. 1937. *See
> also Burtch v. Milberg Factors, Inc.*, 662
> F.3d 212, 224 (3d Cir. 2011) ("Mere
> restatements of the elements of a claim are
> not entitled to the assumption of truth."
> (citation and editorial remarks omitted)).
> Finally, "[w]hen there are well-pleaded
> factual allegations, [the] court should
> assume their veracity and then determine
> whether they plausibly give rise to an
> entitlement to relief." *Iqbal*, 556 U.S. at
> 679, 129 S.Ct. 1937.

809 F.3d at 787.  Importantly, a plaintiff is not required to

establish all elements of a claim--"the post-*Twombly* pleading

standard 'simply calls for enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary

element[s].'"  *Connelly*, 809 F.3d at 789 (quoting *Twombly*, 550 U.S.

at 556); *see also Phillips v. City of Allegheny*, 515 F.3d 224, 234

(3d Cir. 2008).

6

*Pro se* filings are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Supreme Court explained that a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." However, a *pro se* complaint must still meet *Iqbal's* plausibility standard.  *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## III. Discussion

### A. Defendant's Objection

As noted above, Defendant Clark objects to the Report and Recommendation on the basis that Plaintiff cannot seek damages on his excessive force claim because he has not pled more-than-de-minimis physical injury.  (Docs. 59, 60.)  On this basis, he asserts that the case should be dismissed with prejudice.  (*Id.*) The Court concludes Defendant's objection is without merit.

Defendant's objection concerning Plaintiff's extent-of-injury allegations points to one factor of many that are to be considered when determining the viability of an excessive force claim.  As recently summarized by the Third Circuit Court of Appeals in *Robinson v. Danberg*, No. 15-3040, —--F. App'x—--, 2016 WL 7364148

7

(3d Cir. Dec. 19, 2016) (not precedential),

> post-conviction excessive force claims are
> governed by the Eighth Amendment, which
> protects convicted prisoners from cruel and
> unusual punishment.  Force amounts to cruel
> and unusual punishment when it is applied
> "maliciously and sadistically for the very
> purpose of causing harm" instead of "in a
> good faith effort to maintain or restore
> discipline."  *Hudson v. McMillian*, 503 U.S.
> 1, 6 (1992) (quoting *Whitley v. Albers*, 475
> U.S. 312, 321-21 (1986)). . . . [S]everal
> factors should be considered: "[1] the need
> for the application of force, [2] the
> relationship between the need and the amount
> of force that was used, [3] . . . the extent
> of the injury inflicted, . . . and [5] any
> efforts made to temper the severity of a
> forceful response."  *Whitley*, 475 U.S. at 321
> (internal quotation mark omitted) (quoting
> *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d
> Cir. 1973) (Friendly, J.).  The extent of an
> injury "may suggest 'whether the use of force
> could plausibly have been thought necessary'
> in a particular situation," but "[t]he
> absence of serious injury" while "relevant to
> the Eighth Amendment inquiry . . . does not
> end it."  *Hudson*, 503 U.S. at 7 (quoting
> *Whitley*, 475 U.S. at 321).

2016 WL 7364148, at *3.

Concerning the extent of injury, *Robinson* also noted that

"while . . . 'the degree of injury is relevant[,] . . . there is no

fixed quantum of injury that a prisoner must prove that he suffered

through objective or independent evidence in order to state a claim

for . . . excessive force.'"  2016 WL 7364148, at *2 (quoting

*Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000)).  As explained

by the Supreme Court in *Wilkins v. Gaddy*, 559 U.S. 34 (2010), when

a prisoner alleges that prison officers used excessive force

8

against the prisoner the "'core judicial inquiry' is not whether a

certain quantum of injury was sustained, but rather "whether force

was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm."  *Id.* at

37 (quoting *Hudson*, 503 U.S. at 7).  Importantly, "'[w]hen prison

officials maliciously and sadistically use force to cause harm,' .

. . 'contemporary standards of decency always are violated . . .

whether or not significant injury is evident.  Otherwise, the

Eighth Amendment would permit any physical punishment, no matter

how diabolic or inhuman, inflicting less than some arbitrary

quantum of injury.'"  *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503

U.S. at 9 (Blackmun, J., concurring in judgment)).  *Wilkins*

clarified that absence of serious injury is not irrelevant to an

Eighth Amendment inquiry as it is a "factor that may suggest

whether the use of force could plausibly have been thought

necessary in a particular situation[, or] may . . . provide some

indication of the amount of force that was applied."  *Id.* at 37

(internal quotations and citations omitted).

> As we stated in *Hudson*, not "every malevolent
> touch by a prison guard gives rise to a
> federal cause of action."  503 U.S. at 9, 112
> S.Ct. 995.  "The Eighth Amendment's
> prohibition of 'cruel and unusual'
> punishments necessarily excludes from
> constitutional recognition *de minimis* uses of
> physical force, provided that the use of
> force is not of a sort repugnant to the
> conscience of mankind."  *Ibid.* (some internal
> quotation marks omitted).  An inmate who
> complains of a "push or shove" that causes no

9

>           discernible injury almost certainly fails to
>           state a valid excessive force claim.  *Ibid.*
>           (quoting *Johnson v. Glick*, 481 F.2d 1028,
>           1033 (2d Cir. 1973)).
>
>           Injury and force however, are only
>           imperfectly correlated, and it is the latter
>           that ultimately counts.

*Wilkins*, 559 U.S. at 37-38.  As stated in *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002), "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries."  Because injuries are only one of several factors a court must consider to answer the question of whether the force was used maliciously or sadistically to cause harm, "*de minimis* injuries, do not necessarily establish *de minimis* force."  *Id.* at 649.

Liability can arise for an Eighth Amendment excessive force violation if a defendant does not directly inflict the force--a failure to intervene in another's use of excessive force can give rise to such liability.  *See*, *e.g.*, *Smith*, 293 F.3d at 650.  A correctional officer has a duty to take reasonable steps to protect an inmate from another officer's use of excessive force, even if the excessive force is employed by a superior.  *Id.*  A correctional officer's failure to intervene in the use of excessive force can be the basis of liability for an Eighth Amendment violation under § 1983 if the officer had a reasonable opportunity to intervene and simply refused to do so.  *Id.*  "The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-

intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots, or clubs." *Id.* at 251.

As to the specifics of the force allegedly used in this case, some courts have determined that the use of mace did not support an excessive force claim where it was used in proportion to what was needed in a given situation. *See*, *e.g.*, *Dickens v. Danberg*, Civ. No. 10-786-LPS, 2012 WL 2089516, at *8 (D. Del. June 8, 2012). However, it has long been recognized that "[i]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7ᵗʰ Cir. 1984); *see also Foulk v. Charrier*, 262 F.3d 687, 701-02 (8ᵗʰ Cir. 2001) (stating application of pepper spray when inmate being compliant can constitute Eighth Amendment violation). *Robinson* concluded that the use of mace on a prisoner who was locked in his cell and posed no imminent threat to staff or inmates at the time he was allegedly maced would allow a reasonable factfinder to conclude that the use of force was more than *de minimis* and a violation of the prisoner's Eighth Amendment rights. 2016 WL 7364148, at *4.

Applying the principle that "the application of force by prison guards exceeding that which is reasonable and necessary under the circumstances, may be actionable," the Third Circuit

11

Court of Appeals found that the use of a restraint chair can give rise to an Eighth Amendment claim.  *Young v. Martin*, 801 F.3d 172, 180-82 (3d Cir. 2015) (internal quotation omitted) (citing *inter alia Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).  *Young* also cited *Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009), for the proposition that striking and kicking a subdued inmate was not reasonable or necessary under established law.  801 F.3d at 181. Dragging an inmate who was unable to walk because of an injured knee could be considered "'unncecessary and wanton infliction of pain'" in certain circumstances, particularly when considered in conjunction with other allegations of the use of unnecessary force. *See, e.g., Almuhsin v. Warden of Dauphin County Prison*, No. 1:16-CV-365, 2016 WL 1076835, at *4 (M.D. Pa. Mar. 18, 2016) (quoting *Whitley*, 475 U.S. at 319).

    As set out above, Plaintiff's allegations include the following: he was dragged to the SHU and was forced to try to walk on his injured knee rather than being transported in a wheelchair as was originally directed; he was held on the ground and maced twice; he was placed in a restraint chair; and he was slapped in the head several times.  (Doc. 39 at 3-5.)  Plaintiff alleges that he was not resisting any order or directive in the course of the events described.  (*Id.*)  Plaintiff states that Defendants Lexlucski, Clark, and MacDonald either ordered, inflicted, or failed to intervene in the alleged wrongdoing.  (*Id.*)

The review of relevant caselaw clearly indicates that Defendant's argument that Plaintiff's Eighth Amendment excessive force claim fails because he did not allege "a more-than-de minimis physical injury" (Doc. 60 at 4) is without merit.  Importantly, Defendant does not engage in the contextual analysis required by the Supreme Court and Third Circuit Court of Appeals when considering an excessive force claim.  Defendant's support for the claimed error is thinly articulated but any inference that the degree of harm alleged is a threshold requirement to pleading an excessive force claim is contradicted by relevant precedent reviewed above as is his inference that the use of mace, being placed in a restraint chair, being slapped in the head, and being dragged on an injured knee--all allegedly without provocation-- cannot support an Eighth Amendment claim.  Essentially, Defendant extracts the "the extent of the injury inflicted," factor, *Whitley*, 475 U.S. at 321, from the required analysis and gives it prime consideration rather than the subsidiary importance stressed by the Supreme Court and Third Circuit Court of Appeals.  *See*, *e.g.*, *Wilkins*, 559 U.S. at 37-38; *Hudson*, 503 U.S. at 7; *Smith*, 293 F.3d at 648-49.  Defendant's citations to cases where "similar claims of temporary injuries" were found to be *de minimis* (Doc. 60 at 4-5), are unavailing in that they are not presented as part of the required fact-specific, multi-factored analysis, and Defendant does not cite a single case where the force allegedly used against

13

Plaintiff was categorically found to result in no more than *de minimis* injury which could not support an excessive force claim. As cautioned by *Smith*, *de minimis* injury and *de minimis* force are not to be conflated--the excessive force analysis must be driven by the latter.  293 F.3d at 648-49.

Considered in the relevant context, Plaintiff's claims are sufficient to satisfy the plausibility standard needed to survive a motion to dismiss.  Assumed to be true, Plaintiff's allegations that, without provocation or wrongdoing on his part, he was dragged, maced, put in a restraint chair, and slapped (Doc. 39 at 3-5) allow the Court to draw the reasonable inference that Defendants Lexlucski, Clark, and MacDonald are liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 678.  The alleged force exerted without provocation at a time when there was no apparent need to maintain or restore discipline, if proven, would support that the force was applied "maliciously and sadistically for the very purpose of causing harm."  *Hudson*, 503 U.S. at 8.  As noted above, a plaintiff is not required at this stage of the proceedings to establish all elements of a claim--"the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Connelly*, 809 F.3d at 789 (quoting *Twombly*, 550 U.S. at 556); *see also Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  In his Amended Complaint, Plaintiff states that

14

alleged wrongdoing was captured on prison video cameras, two witnesses were willing to testify, and other inmates who were in the D-Block day room witnessed the whole incident. (Doc. 39 at 9-10.)  Though not required, the articulation of specifically anticipated discovery evidence reinforces the conclusion that the facts alleged in the Amended Complaint (Doc. 39) raise a reasonable expectation that discovery will reveal the necessary elements of Plaintiff's excessive force/failure-to-intervene claim.  Therefore, Defendant's motion to dismiss this claim must be denied.

## B. Plain Error Review

The Court finds no plain error in the uncontested portions of the Report and Recommendation.  Therefore, the Court adopts Magistrate Judge Mehalchick's recommendations that all claims against Defendant DeRose be dismissed for lack of personal involvement or supervisory liability, his Fourteenth Amendment Due Process claim arising from placement in restrictive housing be dismissed for failure to state a claim upon which relief can be granted, his Eighth Amendment Deliberate Indifference claim arising from the alleged denial of appropriate diabetic food trays be dismissed for failure to state a claim upon which relief can be granted, and leave to amend be denied. (Doc. 58 at 18.)  The Court also concurs with Magistrate Judge Mehalchick's conclusion that, because Defendant did not offer any argument countering Plaintiff's claims that he did not exhaust administrative remedies because of

fear of reprisal, Defendant's Motion to Dismiss (Doc. 48) should be denied with respect to the issue of exhaustion.  (Doc. 58 at 8.) The denial is without prejudice to raising the defense after the close of discovery.  (*Id.*)

### C. Defendants Lexlucski and MacDonald

In her Report and Recommendation, Magistrate Judge Mehalchick noted that an Order to Show Cause was being filed concurrently. (Doc. 58 at 18 n.2.)  In the Order to Show Cause, Plaintiff was to show cause why Defendants Lexluski and MacDonald had not been served and failure to do so on or before March 7, 2017, could result in the action being dismissed.  (Doc. 57.)  The time for Plaintiff to respond to the Order to Show Cause has elapsed and Plaintiff has failed to comply with the Order.

At this juncture, Plaintiff has failed to provide updated addresses after notice that service was not executed on Defendants Lexlucski and MacDonald (Docs. 43, 44), these Defendants have not been served pursuant to Rule 4 of the Federal Rules of Civil Procedure, and Plaintiff has failed to respond to the Court's Order to Show Cause regarding his failure to serve these Defendants (Doc. 57).  The Complaint having been filed over two years ago (Doc. 1), and the Amended Complaint having been filed over ten months ago (Doc. 39), dismissal of the unserved Defendants for failure to prosecute is warranted.

"The authority of a court to dismiss sua sponte for lack of

16

prosecution has generally been considered an 'inherent power,'
governed not by rule or statue but by the control necessarily
vested in courts to manage their own affairs as to achieve the
orderly and expeditious disposition of cases." *Link v. Wabash R.
Co.*, 370 U.S. 626, 631 (1962).  However, before such dismissal is
ordered, the Court must generally review the factors set out in
*Poulis v. State Farm Fire & Casualty Company*, 747 F.2d 863, 868 (3d
Cir. 1984).[1]  The *Poulis* factors are (1) the extent of the party's
personal responsibility; (2) prejudice to the adversary; (3) any
history of dilatoriness; (4) whether the party acted willfully or
in bad faith; (5) the availability of alternative sanctions; and
(6) the meritoriousness of the claim or defense.  *Poulis*, 747 F.2d
at 868.  Not all factors must weight against a plaintiff to warrant
dismissal, but the District Court should address each factor.
*Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988); *United States v.
$8,221,877.16 in U.S. Currency*, 330 F.3d 141, 162 (3d Cir. 2003).

Here Plaintiff is responsible for providing service
information and has been informed of this responsibility on several
occasions.  (*See*, *e.g.*, Docs. 9, 16, 28.)  The piecemeal litigation
caused by failure to serve named Defendants is prejudicial to the

---

[1]  "Ordinarily a District Court is required to consider and
balance [the Poulis factors] when deciding, sua sponte, to use
dismissal as a sanction.  When a litigant's conduct makes
adjudication of the case impossible, however, such balancing under
Poulis is unnecessary."  *Iseley v. Bitner*, 216 F. App'x 252, 255
(3d Cir. 2007) (not precedential) (citing *Guyer v. Beard*, 907 F.2d
1424, 1429-30 (3d Cir. 1990)).

adversary.  A review of the docket shows that Plaintiff has a
history of dilatoriness in service matters as well as timely filing
other documents.  (*See*, *e.g.*, 33, 37, 54, 56.)  Although some
delays have been attributable to mail difficulties, most have not
(*see id.*)--Plaintiff's failure to file requested documents and
failure to comply with Court Orders therefore must be deemed
willful in most instances.  Having previously warned Plaintiff
about the potential consequences of failing to comply with Court
Orders (Docs. 28, 57), Plaintiff's continuing noncompliance does
not provide the availability of alternative sanctions.  As
discussed above, the Court has concluded that Plaintiff's excessive
force/failure-to-intervene claims against Defendant Clark and the
unserved Defendants have been deemed meritorious enough to survive
the Motion to Dismiss.  However, they cannot be held answerable for
claims against them when they have not been served.

On balance, five of the six *Poulis* factors weigh in favor of
dismissal.  With no reason provided for his failure to respond to
the Order to Show Cause (Doc. 57), dismissal of all claims against
Defendants Lexlucski and MacDonald is appropriate.  Magistrate
Judge Mehalchick's recommended disposition is modified to reflect
this dismissal.

## IV. Conclusion

For the reasons discussed above, Magistrate Judge Mehalchick's
Report and Recommendation (Doc. 58) is adopted as modified.  The

pending Motion to Dismiss (Doc. 48) is granted in part and denied

in part.  The motion is denied with regard to Defendant's assertion

that dismissal is warranted for failure to comply with the PLRA's

exhaustion requirement (Doc. 51 at 10 (citing 42 U.S.C. §

1997e(a)).)  The Motion is denied insofar as Plaintiff's Eighth

Amendment claim against Defendant Clark regarding the use of

excessive force/failure-to-intervene goes forward.[2]  The motion is

granted in all other respects.  Therefore, all claims against

Defendant DeRose are dismissed, Plaintiff's Fourteenth Amendment

Due Process claim is dismissed, Plaintiff's Eighth Amendment

Deliberate Indifference claim related to diabetic food trays is

dismissed, and leave to amend is denied.  Further, based on

Plaintiff's failure to respond to the Order to Show Cause (Doc.

57), all claims against Defendants Lexlucski and MacDonald are

dismissed.  An appropriate Order is filed simultaneously with this

action.

                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge

DATED: March 30, 2017

---

    [2]  Magistrate Judge Mehalchick recommends that these claims
also go forward as to Defendants Lexlucski and MacDonald.  (Doc. 58
at 18.)  However, because they are dismissed from the action based
on Plaintiff's failure to respond to the Order to Show Cause (Doc.
57), the Eighth Amendment claims go forward only as to Defendant
Clark.  This change is the modification noted in the text.